G&G RECORDS, INC., ET AL, * Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent G&G Records, Inc. v. Commissioner
Docket Nos. 20305-80, 20306-80, 20307-80.
United States Tax Court
T.C. Memo 1983-343; 1983 Tax Ct. Memo LEXIS 444; 46 T.C.M. (CCH) 430; T.C.M. (RIA) 83343; June 13, 1983. *444 In 1972, G, a corporation, sold its principal asset. G failed to report the transaction in its 1972 return, and has conceded that respondent's determination of additional unreported income for that year is correct. Held, that G's return for 1972 was fraudulent, and the statute of limitations does not bar the assessment of deficiencies and additions to tax for 1972. Beginning in 1972, and extending into 1975, at a time when G had outstanding debts and tax liabilities, P, who was G's president and sole shareholder, caused a total of $45,396 to be withdrawn from the corporation's bank account and deposited in his personal account. Held, that P is liable for G's 1972 taxes, additions to tax and interest, as a transferee of G, to the extent of $45,396. Respondent determined deficiencies in tax for the years 1972 through 1975 against P and his wife W, with respect to their joint returns. Respondent also determined additions to tax under section 6653(b) against P for the same years. Held, respondent's determination of deficiencies is approved. Heldfurther, that additions to tax against P under section 6653(b) for all years is approved. Held further, that the statute of limitations *445 does not bar the assessment of deficiencies and additions to tax against P and W. Held further, that W is not entitled to relief as an innocent spouse under the provisions of section 6013(e). Murray Appleman, for the petitioners. Adeline P. Malone and Joseph F. Maselli, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notices issued on August 4, 1980, respondent determined deficiencies in Federal income tax, and additions to tax under section 6653(b) as follows: Additions to Tax
Under
Petitioner(s)
Docket No.
Year
Deficiency
Section 6653(b) [1]
G&G Records, Inc.
20305-80
1972
$20,455.00
$10,227.00
G&G Records, Inc.,
Transferor, Vincent J.
DeRosa, Transferee
20307-80
1972
20,455.00
10,227.00
Vincent J. DeRosa &
Louise DeRosa
20306-80
1972
443.94 * 221.97
1973
5,017.24 * 2,508.61
1974
3,955.23 * 1,977.61
1975
2,594.85 * 1,297.43 By agreement of the parties and by order *446 of the Court, these cases were consolidated for purposes of trial, briefing and opinion. At the time of trial, respondent moved for leave to amend his answer in Docket No. 20306-80, which was granted by the Court.
After concessions by the parties, the issues to be decided are: (1) Whether the failure of G&G Records, Inc. to report the 1972 sale sale of its assets and inventory on its income tax return for that year was due to fraud; (2) whether Vincent J. DeRosa is a transferee of the assets of G&G Records, Inc., thus making him liable, to the extent thereof, for the deficiency and additions to tax determined against G&G Records, Inc. for calendar year 1972; (3) whether Vincent and Louise DeRosa received unreported taxable income from G&G Records, Inc. during calendar years 1972, 1973, 1974 and 1975; (4) whether Vincent and Louise DeRosa are entitled to claim dependency exemptions of $750 for each of two children during calendar years 1972, 1973, 1974 and 1975; (5) whether Vincent DeRosa's failure to report income, and his claim for three dependency exemptions on his joint income tax returns for calendar years 1972, 1973, 1974 and 1975 were due to fraud; (6) whether Louise DeRosa is *447 an innocent spouse within the meaning of section 6013(e); and, (7) whether the statute of limitations bars the assessment and collection of tax from G&G Records, Inc. for calendar year 1972 from Vincent DeRosa as transferee of G&G Records, and from Vincent and Louise DeRosa for calendar years 1972, 1973, 1974 and 1975. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The joint exhibits are also incorporated herein by this reference. Petitioner G&G Records, Inc. (hereinafter "G&G Records" or "the corporation") filed its 1972 corporate income tax return on May 10, 1973, with the Internal Revenue Service Center in Holtsville, New York.Petitioners Vincent and Louise DeRosa, husband and wife (hereinafter "Vincent" and "Louise"), filed their joint income tax returns for calendar years 1972 through 1975 with respondent's same Service Center. G&G Records had its principal place of business in the Bronx, New York, during calendar year 1972. Vincent and Louise resided in Whitestone, New York, at the time they filed their petitions in this Court. On March 18, 1968, Vincent purchased all of the stock of G&G Records from Jack Cohen for a price of $2,000. From March *448 19, 1968, through calendar year 1975, Vincent was the president and sole shareholder of G&G Records. As the president and sole shareholder, Vincent was in full control of the corporation. During calendar years 1968 through 1972, the principal asset of the corporation was the Play Pen Lounge, a restaurant and bar located in New York City. On December 28, 1971, G&G Records entered into a contract with Bill Zing Dep Chin, Doo Nge Ng Young, Joseph Eng and Fung Lap Leung (hereinafter "the purchasers") for the sale of the Play Pen Lounge. The parties to this contract agreed on a purchase price of $87,500, which was to be paid over an extended period of time. The contract required payments as follows: Deposit upon signing of contract
$ 8,750
Payment upon closing
21,250
38 notes of $1,500 payable in
equal monthly installments beginning
July 1, 1972, except for the last
note which was to be in the sum
of $2,000
57,500
$87,500
Vincent negotiated the sale of the Play Pen Lounge, drafted the sales contract, and represented G&G Records at the subsequent closing in 1972. The purchasers timely made their payments as they became due. Each month from July 1, 1972, through August 1, 1975, G&G Records received *449 a check in the appropriate amount. The checks sent by the purchasers to G&G Records were received and deposited into G&G Records' bank account at the Amalgamated Bank of New York. In a separate transaction, G&G Records sold the inventory of the Play Pen Lounge for $1,496 in calendar year 1972. The corporation was inactive thereafter. G&G Records filed a corporate income tax return for 1972, showing a net loss of $9,261. Neither the sale of the Play Pen Lounge nor its inventory was reported in said return, and it filed no income tax returns thereafter. Vincent reviewed the corporate return before it was filed, and was aware that the omitted transactions were taxable and reportable. G&G Records had taxable income, and Federal income tax liability, for the year 1972, computed as follows: Sales Price for Play Pen Lounge
$87,500 Less: Cost Basis of Assets Sold
15,400 Taxable Gain
$72,100 Income from Sale of Inventory
1,496 Recapture of Depreciation
5,181 Overstatement of Gross Receipts
on Return
(13,360)
Net Loss per Return
( 9,261)
Net Taxable Income
[2] *450 $56,156 Federal Income Tax for 1972
$20,455 Following the sale of G&G Records' assets and inventory, Vincent instructed Corinne Garafolo, the corporate bookkeeper, to withdraw various sums of money from G&G Records' corporate bank account and to deposit these sums in his personal savings account. The sums of money withdrawn during the years in issue from the corporate bank account of G&G Records, and deposited in Vincent's bank account, were as follows: Year
Amount
1972
$1,500
1973
18,000
1974
15,000
1975
10,896
Vincent and Louise did not report these amounts as income on their tax returns for calendar years 1972 through 1975. Except for certain incomplete cash receipts and disbursement sheets and checkbook stubs for parts of 1972 and 1973, the corporate books and records of G&G Records were not produced at trial. The sheets and checkbook stubs produced do not provide an adequate basis from which to determine the overall financial condition of G&G Records during calendar years 1972 through 1975. The income tax returns of G&G Records for calendar years 1971 and 1972 have been placed in evidence. In this record, the corporate balance sheets attached to these returns, as adjusted, best reflect the financial condition of *451 G&G Records during these calendar years. Taking into consideration both the liability for income tax in 1972 (without consideration of additions to tax or interest) and the remaining unpaid notes held by G&G Records resulting from the sale of the Play Pen Lounge, the assets and liabilities of G&G Records at the end of canendar years 1971 and 1972 are shown below: End of Calendar Year
1971
1972
ASSETS: 1. Cash
$ (3,379.89)
$ 5,665.74
2. Inventories
4,220.00 3. Buildings and Fixtures
Less Depreciation
10,218.83 4. Other Assets
750.00 5. Remaining Unpaid Notes
Held by G&G Records,
Representing the Unpaid
Balance of the Purchase
Price for the Play Pen
Lounge
48,500.00 TOTAL ASSETS
$11,808.94 $54,165.74
LIABILITIES: 1. Accounts Payable
$13,045.68 $ 2,782.84
2. Mtges, bonds, notes
payable in less than
one year
1,131.20 3. Other current liabilities
3,318.51 4,988.91
4. Loans from Shareholders
16,225.00 16,225.00
5. Income tax liability for
calendar year 1972
20,455.00
6. Other liabilities
1,220.00 TOTAL LIABILITIES
$34,940.39 $44,451.75
TOTAL ASSETS OVER (UNDER) LIABILITIES
($23,131.45)
$ 9,713.99 At some point not later than the end of 1975, the distributions from G&G Records to Vincent, as detailed in our findings, *452 supra, rendered G&G Records insolvent. Vincent received $390 of wages from G&G Records during 1972. During 1973 and 1974, Vincent received $2,520 and $1,980, respectively, of taxable income from Joseph Pizza, Inc. Vincent and Louise received interest income during 1972 through 1975 as follows: Year
Amount
1972
$100.84
1973
44.96
1974
98.43
1975
49.61
Vincent and Louise did not report Vincent's wage income from G&G Records on their 1972 income tax return, nor did they report his wage income from Joseph Pizza, Inc. on their 1973 and 1974 tax returns. They also failed to report any interest income on their joint income tax returns for calendar years 1972 through 1975. Vincent knew, during 1972 through 1975, that both wage and interest income should be reported on his personal income tax returns. During his investigation, respondent's agent asked Vincent whether he had received wage income from Joseph Pizza, Inc. Vincent denied that he had. During the years in issue, Vincent was a practicing attorney in New York State. From his legal practice, Vincent was familiar with matrimonial law, and the procedures for buying and selling businesses. He had materials on Federal taxes in his office, *453 and had at least a general practitioner's familiarity with tax law. During 1972 through 1975, Adeline Kunis (formerly Adeline DeRosa) had custody of Vincent DeRosa, Jr. and Danice DeRosa, the children of her former marriage to Vincent. During 1972 through 1975, Vincent provided no more than $100 per year toward the support of each child. Vincent knew that he had to support Vincent, Jr. and Danice, if he was to claim dependency exemptions for them on his tax returns. Vincent and Louise claimed dependency exemptions for Vincent, Jr. and Danice for each of the years 1972 through 1975 in their joint returns. Victor DeRosa, Vincent's brother, prepared Vincent and Louise's personal income tax returns for each of the years in issue. Vincent reviewed the returns before filing them. Victor DeRosa prepared his brother's 1972 through 1975 income tax returns solely from information given to him by Vincent. Victor was not informed of his brother's financial interest in G&G Records, or Joseph Pizza, Inc. Vincent did not give Victor DeRosa any books or records to help him prepare Vincent and Louise's tax returns. Louise, who lived with Vincent during the years in issue, made all purchases *454 and paid all bills pertaining to the household during 1972 through 1975, with money supplied by Vincent. During these years, she deposited Vincent's payroll checks from G&G Records in her checking account. For at least part of the year 1975, she worked part-time and without pay in the office of a restaurant (Stuff's) which was owned by Vincent. In his statutory notice of deficiency, respondent increased the taxable income of Vincent and Louise for 1972 through 1975 as follows: 12/31/72
12/31/73
12/31/74
12/31/75
Unreported Wages
$ 390.00
$ 2,520.00
$ 1,989.00
Unreported Interest
100.84
44.96
98.43
49.61
Constructive Dividends
1,400.00
17,900.00
14,900.00
10,196.29
G&G Records (net)
Medical and Dental
Deduction Reduced
75.63
356.11
350.51
409.84
Exemptions Disallowed
1,500.00
1,500.00
1,500.00
1,500.00
TOTAL
$3,466.47
$22,321.07
$18,837.94
$12,155.74
Vincent and Louise filed joint returns for the years, [3] *455 on the dates, and reported gross income, as follows: [4]
Year
Gross Income
Date Return Filed
1972
$11,475.00
April 15, 1973
1973
11,675.00
August 7, 1974
1974
11,755.00
April 15, 1975
1975
15,520.00
April 15, 1976
We find that Vincent and Louise understated their gross income in their returns in each of the years 1972 through 1975 in the following amounts: Year
Amount of Understatement
1972
$1,890.84
1973
20,464.96
1974
16,987.43
1975
10,245.90
All such omitted income was attributable to Vincent. Vincent and Louise underpaid their income tax in each of the years 1972 through 1975. ULTIMATE FINDINGS OF FACT The failure of G&G Records to report the sale of its inventory and assets on its corporate income tax return for calendar year 1972, with resulting underpayment of tax, was due to fraud. Vincent DeRosa is the transferee of G&G Records' assets to the extent of $45,396. Vincent's failure to report wage and interest income, income from G&G Records, his improper claim for dependency exemptions, in his income tax returns for years 1972 through 1975, was due to fraud. OPINION Respondent bears a heavy burden of proof in these cases. As a general rule, a tax must be assessed, or a statutory notice must be issued, within three years of the filing of a return, sections 6501(a), *456 6503(a). The notices of deficiency sent to G&G Records and to Louise and Vincent were issued long after that period had expired. Thus, the assessment of deficiencies and additions to tax under section 6653(b) against G&G Records for calendar year 1972 is barred by the statute of limitations, unless the respondent can show that the 1972 corporate tax return filed by G&G Records was fraudulent. Section 6501(c). Likewise, the assessment of deficiencies and additions to tax under section 6653(b) against Louise and Vincent for calendar years 1972 through 1975 is also barred by the statute, absent proof by the respondent that these returns were false and fraudulent with the intent to evade tax, section 6501(c), or, for the years 1973 through 1975, that unreported income for each of these tax years exceeds 25 percent of the amount of gross income stated on each of these returns, section 6501(e). Further, the statutory notice of liability sent to Vincent, as the transferee of the assets of G&G Records, is barred by the statute of limitations unless respondent prevails in showing that G&G Records filed a false or fraudulent tax return for calendar year 1972.Section 6901(c). Respondent *457 further must show that Vincent was a transferee of the assets of G&G Records, within the meaning of section 6901(a)(1)(A), if respondent is to be entitled to collect the G&G Records' tax deficiency from Vincent. Section 6902(a). Respondent has the burden of proof with regard to all of these matters. Sections 6902(a), 7454(a); Rule 142(a), (b), and (d). To arrange matters in logical sequence, the issues relating to G&G Records will be addressed first. We will then take up Vincent's liability as a transferee, and, finally, we will decide the validity of respondent's asserted deficiencies and additions to tax against Louise and Vincent DeRosa. I. G&G Records.
As previously noted, respondent has the burden of proof with regard to the issue of fraud and thus to show that the assessment of deficiencies and additions to tax against G&G Records is not barred by the statute of limitations. Respondent contends that G&G Records filed such a return for calendar year 1972. If we are to sustain respondent's determination for calendar year 1972, he must prove, by clear and convincing evidence, that there was (1) some underpayment of tax by G&G Records for calendar year 1972, and (2) that *458 some part of this underpayment was due to fraud. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Lee v. United States,466 F.2d 11, 16 (5th Cir. 1972). If the respondent can satisfy the above two-prong test, the addition to tax under section 6653(b) is properly applied to the entire deficiency for calendar year 1972, [5] and there is no time limit for the collection of these deficiencies and additions to tax. Section 6501(c); Stone v. Commissioner,56 T.C. 213 (1971). The first is quickly met. G&G Records concedes that it failed to report $65,417 of gross income on its 1972 corporate income tax return, and we have found the amount of underpayment of tax resulting from that failure. The only question remaining, then, is whether any part of such underpayment was due to fraud.
In order to prove fraud, respondent must also show that the taxpayer intended to evade taxes which he knew or believed *459 to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), affg. 264 F. Supp. 824 (E.D. Pa. 1967); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. We recognize that proof of a taxpayer's fraudulent intent is seldom established by direct evidence. Rather, fraudulent intent must in many instances be proved by the whole course of the taxpayer's conduct, and the inferences that can be properly drawn therefrom. Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Beaver v. Commissioner,55 T.C. 85, 93 (1970); Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). The existence of fraud is a question of fact that we must decide after an examination of all the evidence in the record. Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. 578 F.2d 1383 (8th Cir. 1978). Our findings of fact establish that Vincent was the sole stockholder and president of G&G Records from March 18, 1968, through calendar year 1975. At the time Vincent became president and sole shareholder of G&G Records, the principal asset of the corporation was the *460 Play Pen Lounge.On December 28, 1971, Vincent entered into a contract for the sale of this principal asset for $87,500. Vincent negotiated the sale of the Play Pen Lounge, drafted the sales contract, and represented G&G Records at the subsequent closing. In a separate transaction, G&G Records also sold the inventory of the Play Pen Lounge for $1,496 in calendar year 1972. Thereafter, the only assets of G&G Records were the proceeds resulting from these sales. Nowhere in the 1972 corporate tax return were these sales disclosed. We think that the record before us establishes, by clear and convincing evidence, that G&G Records filed a false and fraudulent income tax return for calendar year 1972. As the president and sole stockholder, Vincent had full control of G&G Records throughout the period now in question. He was admittedly the officer of the corporation responsible for filing accurate income tax returns. Since he represented G&G Records at the time of the sale of the Play Pen Lounge, Vincent knew that the corporation had sold its major assets. It was at his direction that the proceeds from the sale of the Play Pen Lounge were deposited in G&G Records' corporate bank account. *461 We find it inherently incredible that a person in Vincent's position would not surmise that there might be some tax consequences resulting from such a transaction. He was not an individual suffering from a lack of formal education. On the contrary, Vincent was an attorney. As such, he knew of his obligation, as the responsible corporate officer, to accurately report the income that G&G Records derived during 1972 from the sale of its corporate assets. When interviewed by respondent's agent, he admitted as much. Cf. Vise v. Commissioner,31 T.C. 220 (1958), affd. 278 F.2d 642 (6th Cir. 1960). At the time that Vincent was interviewed by respondent's agent, he stated that he was a "stickler about taxes" and always reviewed his personal return, and the return of G&G Records prior to the filing of such returns. In these circumstances, Vincent's utter failure to give any reasonable explanation of why these sales proceeds were not reported on G&G Records' corporate tax return is most damaging. We do not believe that he could overlook the tax consequences that would result from filing a corporate tax return from which the corporation's principal profitable transaction for the year *462 was omitted. Petitioner insinuates that his reliance upon the corporate accountant to prepare accurate returns, indicates his lack of fraudulent intent. In light of the above, we do not believe this argument is persuasive. It is true that under certain circumstances, a taxpayer's reliance upon an accountant to prepare accurate returns might indicate the absence of fraudulent intent on the part of the taxpayer. Yet good faith reliance on an accountant to prepare an accurate return is only persuasive if the taxpayer has furnished the accountant with all the necessary information to prepare the returns. Estate of Temple v. Commissioner,67 T.C. 143 (1976); Foster v. Commissioner,391 F.2d 727 (4th Cir. 1968). The record before us is vague concerning what exact information was supplied to the corporate accountant at the time that G&G Records' tax return was prepared. It is highly unlikely that a certified public accountant, if fully informed, would, on his own initiative or by negligence, have failed to include the taxable income resulting from the sale of the Play Pen Lounge and inventory on G&G Records' 1972 income tax return, considering the size of the transaction. This case *463 is not one where the claimed reliance on an accountant is an effective defense. See Estate of Temple v. Commissioner,supra.
Upon reflection, it becomes clear that this is not a case where the only evidence of fraud is the substantial understatement of taxable income resulting from the failure of G&G Records to report the proceeds from the sale of its major assets. The large discrepancy between reported and unreported income for 1972, accompanied by attending circumstances, may not absolutely prove fraud, but it is highly probative. Woodham v. Commissioner,256 F.2d 201 (5th Cir. 1958). When one further considers that petitioner had full control of the corporation, represented G&G Records upon the sale of the Play Pen Lounge, and reviewed the corporate return before filing, something other than mere negligence is indicated. Vincent's professional training, his business-oriented law practice, and his failure to give us a credible explanation for the failure of G&G Records to report this income, give substantial support for our holding that respondent has met his burden of showing fraud. Woodham v. Commissioner,supra.We conclude that Vincent, as president and sole shareholder *464 of G&G Records, intentionally sought to evade a corporate tax for the corporation. Woodham v. Commissioner,supra.
Fraud having been established against G&G Records for calendar year 1972, the statute of limitations is not a bar to the assessment of deficiencies and additions to tax against it. Stone v. Commissioner,supra. II. Transferee Liability.
A. Statute of Limitations. Section 6901 provides that under certain circumstances the tax liability of a taxpayer may be assessed and collected from a transferee who has received property from the taxpayer. Section 6901(a)(1)(A) does not determine whether a transferee is actually liable for the unpaid tax liability of the transferor, but rather provides respondent with a procedure by which he may collect taxes. Commissioner v. Stern,357 U.S. 39, 42-45 (1958); Coca Cola Bottling Company of Tucson v. Commissioner,334 F.2d 875 (9th Cir. 1964). Whether a transferee is actually liable for a transferor's tax liability is a determination made under state law. Commissioner v. Stern,supra;Segura v. Commissioner,77 T.C. 734 (1981). Vincent contends that the statute of limitations bars the assessment and collection of income taxes and *465 additions to tax from him, as a transferee, since more than one year has transpired since the three-year statute of limitations provided by section 6501(a) has expired for the assessment and collection of income taxes and additions to tax from G&G Records. See section 6901(c). Since we have held that G&G Records filed a false and fraudulent income tax return for calendar year 1972, there is no statute of limitations for the assessment and collection of deficiencies and additions to tax against G&G Records, section 6501(c), and it follows that the one-year additional period provided by section 6901(c) for the assessment of transferee liability is inapplicable. Kreps v. Commissioner,42 T.C. 660 (1964), affd. 351 F.2d 1 (2d Cir. 1965); Rowen v. Commissioner,18 T.C. 874, revd. on other grounds 215 F.2d 641 (2d Cir. 1954). Having disposed of this threshold question, we may now proceed to the principal issue. B. Vincent DeRosa's Liability as a Transferee. Respondent has the burden of proving that the petitioner, as a transferee, is liable for the corporation's indebtedness to respondent.Section 6902(a); Rule 142(d). If respondent is to sustain his burden, he must show by competent *466 evidence that: (1) the transferor transferred property to the transferee without consideration; (2) the transferor was insolvent at the time of, or rendered insolvent by the transfer; and (3) that the respondent has made a reasonable effort to collect the taxes from the transferor. Kreps v. Commissioner,supra;Leach v. Commissioner,21 T.C. 70 (1953); Alonso v. Commissioner,78 T.C. 577 (1982). On the basis of the evidence before us, it is clear that Vincent received $45,396 from G&G Records over a four-year period, without consideration. After the sale of the Play Pen Lounge and its inventory, G&G Records' sole assets were some cash and the proceeds resulting from this sale. At Vincent's direction, these proceeds were deposited in G&G Records' corporate bank account.During calendar years 1972 through 1975, approximately $45,396 was withdrawn from the corporate bank account and deposited in Vincent's personal savings account at his direction.Section 6901(h) states that a transferee includes a donee, heir, legatee, devisee, or distributee. Since G&G Records distributed $45,396 to Vincent, during 1972 through 1975, petitioner qualifies as a transferee under section 6901(h). We next *467 consider whether G&G Records was insolvent at the time of, or rendered insolvent by, the transfer of this money to Vincent. As previously noted, this is a matter to be determined under applicable state law, in this case the law of New York. [6] This determination is made difficult due to the fact that, except for fragments, the corporate books and records were not produced or entered in evidence. [7] We must therefore resort to other evidence, such as the balance sheets forming part of the corporation's income tax returns. The balance sheets on the corporate tax return for 1971 indicate that G&G Records was insolvent at the end of the year. No additional information *468 found in the record would contradict this conclusion, and accordingly we have found that at the end of calendar year 1971, G&G Records' total liabilities exceeded its total assets by approximately $23,131.45. Solely from the information contained on the balance sheet for December 31, 1972, on the corporate 1972 tax return, one might infer a similar conclusion concerning the solvency of G&G Records at the end of 1972. However, the balance sheet attached to this return (for December 31, 1972, only) is incomplete, and does not reliably reflect the corporation's financial situation. No provision was made in this balance sheet to include as an asset the remaining unpaid notes from the sale of the Play Pen Lounge, nor was G&G Records' 1972 income tax included as a liability.Both of these items must be included if one is to determine whether G&G Records was insolvent at the end of 1972. See Kreps v. Commissioner,supra.Once these two items are included in G&G Records' assets and liabilities, it results that at December 31, 1972, the corporation had an excess of assets over liabilities. Accordingly, it appears that G&G Records was solvent at the time of the initial transfer of $1,500 *469 to Vincent in 1972. Our analysis, however, should not end there. The correct test is not whether G&G Records was insolvent at the time of the initial transer to Vincent, but rather whether G&G Records was insolvent at the time of, or rendered insolvent by the total transfers of money to him. To do otherwise, woiuld ignore the fact that the diversion of corporate funds to Vincent was not limited to the $1,500 he received in 1972, but rather was a part of a larger continuing scheme of diverting corporate assets. When one considers the total amount of proceeds diverted from the corporation for Vincent's personal use, we can only conclude that G&G Records was ultimately rendered insolvent by the diversion of these funds. As shown in our findings of fact, the total assets of the corporation at the end of 1972 were $54,165.74, consisting of cash and notes receivable. After the further distributions to Vincent in 1973, 1974 and 1975, totaling $43,896, only $10,269.74 would have remained to satisfy liabilities totaling $23,996.75 (not counting respondent's claim for taxes), as shown by the corporation's balance sheet filed with its 1972 return. The record does not show that the corporation *470 acquired any additional assets after 1972.
Where the transferor's insolvency results from a planned series of transfers, the transferee is liable irrespective of the particular moment at which the transferor lapses into insolvency, provided that the insolvency of the corporation results no later than at the end of the series of transfers. Borall Corporation v. Commissioner,167 F.2d 865 (2d Cir. 1948); Benoit v. Commissioner,25 T.C. 656 (1955), vacated and remanded on another issue, 238 F.2d 485 (1st Cir. 1956); Don v. Commissioner,T.C. Memo. 1971-130. We believe that this principle is applicable here. We think it reasonably clear from a somewhat sketchy record that G&G Records, the transferor, was rendered insolvent by the transfers in question. Any lingering doubts that respondent has met his burden, however, are dispelled by the operation of New York law. Where, as here, a taxpayer has made a voluntary transfer of property without consideration, at a time when the transferor is indebted, the transfer under New York State law is presumptively fraudulent as to creditors, [8] and the transferee has the burden of establishing that the transferor was not insolvent at the time of *471 the transfer. N.Y. Debt. & Cred. Law sec. 270 (McKinney 1945); Kreps v. Commissioner,supra;Fiest v. Druckerman,70 F.2d 333 (2d Cir. 1934); Seligson v. Sandner,42 F. Supp. 415 (S.D.N.Y. 1941); Capizzi v. Khoury,168 Misc. 490, 5 N.Y.S.2d 201 (N.Y. App. 1938). Respondent having shown that G&G Records was indebted at the time that funds were transferred to Vincent, the burden of establishing G&G Records' solvency shifted to Vincent, who offered nothing. We accordingly hold that respondent has met his burden of establishing the insolvency of G&G Records. Finally, we consider whether respondent has made a reasonable effort to collect the tax liability from G&G Records before proceeding against Vincent as its transferee. The deficiency was determined *472 against G&G Records in August of 1980. There is no evidence in the record that G&G Records engaged in any activity, or received any income, after the sale of the Play Pen Lounge and its inventory in 1972. By 1980, it is fair to conclude that the corporation was an empty shell, if indeed it was still in existence, a fact not disclosed in this record. We believe that it would have been futile for respondent to proceed against G&G Records. Equity does not require that the respondent undertake an idle formality as a precondition to proceeding against a transferee. Kreps v. Commissioner,supra;Coca-ColaBottling Company of Tucson v. Commissioner,supra.Having satisfied all three prongs of the test necessary to establish transferee liability, respondent has carried his burden under section 6902 and Rule 142(d) to show that Vincent was a transferee of the assets of the corporation within the meaning of section 6901. The liability of a transferee extends to cover additions as well as deficiencies and interest thereon. Nader v. Commissioner,323 F.2d 139 (7th Cir. 1963), affg. a Memorandum Opinion of this Court; Kimmes v. Commissioner,T.C. Memo. 1963-59. Having found that Vincent was *473 a transferee of the assets of G&G Records to the extent of $45,396, we hold that he is liable for the corporation's indebtedness to respondent, not to exceed such amount. III. Vincent and Louise DeRosa's Individual Tax Returns.
A. Statute of Limitations - Years 1973 Through 1975. Respondent issued his notice of deficiency to Louise and Vincent on August 4, 1980.Since respondent failed to assert any deficiencies or additions to tax against Louise and Vincent for tax years 1972 through 1975 within the normal three-year statute of limitations, respondent's present action is presumptively barred, section 6501(a), and he has the burden of proving that an otherwise barred assessment falls within one of the exceptions to the statute of limitations. United States v. Borchardt,470 F.2d 257 (7th Cir. 1972); Farmers Feed Co. v. Commissioner,10 B.T.A. 1069 (1928); Rule 142(a). Respondent has properly pleaded two of these exceptions. First, he claims that petitioners filed false or fraudulent income tax returns for 1972 through 1975, so that the income taxes due with respect to such returns may be assessed at any time, section 6501(c). In the alternative, respondent contends that the individual *474 petitioners failed to report gross income for calendar years 1973 through 1975 in excess of 25% of the gross income as stated on their income tax returns for these years, so as to make applicable the six-year statute of limitations provided in section 6501(e)(1)(A). Turning first to respondent's alternative contention: 1. The record establishes, and we have found, the filing dates of the joint return for 1972 through 1975. Respondent's statutory notice, sent on August 4, 1980, was within six years of such filing dates for the years 1973 through 1975. 2. The gross income reported in the joint returns for 1973 through 1975, as shown in our findings of fact, was computed in accordance with the provisions of section 6501(e)(1)(A), taking into account the gross income from Vincent's law practice, as disclosed in schedules attached to his returns. 3. The parties have stipulated that Vincent received taxable income from wages and interest in 1972 through 1975, which was not reported in their returns, in the amounts which we have found. The parties have further stipulated that Vincent withdrew money from G&G Records and deposited it in his personal bank account, in the years and in *475 the amounts shown in our findings of fact. Although the parties did not stipulate as to the taxable nature of these funds in Vincent's hands, Vincent has made no contention herein that he did not receive these funds under claim of right as the corporation's sole shareholder and, regardless of how such funds should be ultimately taxed (e.g., as ordinary dividends, capital gain or return of capital), that they were not reportable as gross income in his returns. Section 61(a); Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1953); Healy v. Commissioner345 U.S. 278 (1975). We therefore hold, and have found, that such amounts were omitted from reported gross income in the years in question. As can be seen, the total of such omitted amounts is in excess of 25 percent of the gross income reported in the joint returns for the years 1973 through 1975. 4. It follows that respondent has met his burden of showing that the six-year statute of limitations under section 6501(e)(1) applies to the joint returns for 1973, 1974 and 1975. It further follows that respondent's statutory notice was timely issued for these yars, [9] and enjoys its usual presumption of correctness as to the adjustments *476 to income made therein, so that Vincent and Louise have the burden of proof to show that such adjustments for the years 1973 through 1975 were erroneous, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). 5. Respondent's statutory notice, however, was not issued within six years of the filing of the 1972 return. Unless respondent *477 establishes fraud for this year, therefore, the assessment of any deficiency is barred. Sections 6501(a), 6501(c). We accordingly defer resolution of the statute of limitations issue for 1972 until we have considered the fraud issue, infra.
B. Adjustments to Income. Respondent's adjustments to the taxable income of Vincent and Louise for the years 1972 through 1975 were as shown in our findings of fact, and were of five types. Three of these types are no longer in issue: a) The adjustment to the medical expense deductions was a purely automatic or technical adjustment resulting from the changes in adjusted gross income caused by respondent's adjustments to gross income, section 213, and will depend upon our resolution of such adjustments. b) For all years, Vincent and Louise have conceded and stipulated that they received and failed to report taxable wage and interest income, in the amounts and for the years as determined by respondent, and as we have found. There accordingly remain only two types of adjustment which are in dispute, applicable to all years: 1. Constructive Dividends from G&G Records. - Vincent and Louise have conceded and stipulated that Vincent received distributions *478 of money from G&G Records' bank account in the amounts and in the years as shown in respondent's statutory notice and our findings of fact. They further do not contend that the proceeds of the sale by G&G Records of the Play Pen Lounge which were taken by Vincent personally, as sole shareholder of G&G Records, were not taken by him under claim of right and they concede, in effect, that such proceeds were taxable to him. Their only contention, as made on brief herein, is that, after G&G Records sold all its assets in 1972, and after it had paid its other debts (obviously not including its 1972 tax liabilities), Vincent caused all remaining net corporate assets, including the installment notes resulting from the sale, to be transferred to himself in 1972, so that his additional income from such transfer (in an undisclosed amount) should all be considered as received in that year, rather than distributed over the years 1972 through 1975, as determined by respondent. We find Vincent's contention (which is basically factual) to be without support in this record, and, indeed, controverted by the record facts. Except as stipulated by the parties, there is no evidence in this record of *479 any gratuitous transfers to Vincent by the corporation, including the installment notes resulting from the sale of the Play Pen Lounge. Nor is there any evidence herein of the payment by the corporation of any of the debts disclosed on its December 31, 1972, balance sheet, or any others. To the contrary, the stipulated facts show that the installment notes were made payable to the corporation, were fully paid on time, were deposited in the corporation's bank account, and that thereafter certain amounts were extracted by Vincent in the years 1972 through 1975. It is noteworthy that, with the exception of the year 1973, the amounts which Vincent took from the corporate bank account were less than the installment notes falling due and paid in such year. What happened to the difference is unexplained. We hold that, for 1972, respondent has affirmatively proved that Vincent received ordinary income in the form of constructive dividends in the amount of $1,500 from G&G Records, out of its earnings and profits for that taxable year, see sections 301(a), (c)(1), and 316(a). As to the years 1973 through 1975, respondent's determination that Vincent received ordinary income in the form *480 of constructive dividends in the stipulated amounts is presumptively correct, and Vincent has failed to show error therein. Welch v. Helvering,supra;United Mercantile Agencies Inc. v. Commissioner,23 T.C. 1105 (1955), modified, vacated and remanded sub nom. Drybrough v. Commissioner,238 F.2d 735 (6th Cir. 1956); Rule 142(a). 2. Claimed Dependency Exemptions for Vincent DeRosa, Jr. and Danice DeRosa.- Vincent's children from a former marriage, Vincent DeRosa, Jr. and Danice DeRosa, did not reside with their father during calendar years 1972 through 1975, but he claimed both as dependents on his 1972 through 1975 joint income tax returns. There is no evidence in the record of any multiple support agreement, written agreement between the former spouses, or any provision of the relevant divorce decree, under which Vincent was given the right to claim dependency exemptions for these children as the noncustodial parent. See sections 152(c) and 152(e)(2)(A). Respondent, while conceding that the children were Vincent's, disallowed the claimed exemptions on the grounds that they were not his dependents in the years before us, within the meaning of section 152.
The general rule of *481 section 152(a) is that a "dependent" is an individual (including the taxpayer's son or daughter) "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer) * * *. Section 152(e) further provides, in relevant part: (2) Special rule.-The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (B)(1) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. Vincent's testimony with respect to the support which he provided his children was entirely vague, evasive and unconvincing. He was unable to state any specific amount per year which he had given to or for the support of Vincent, Jr. and Danice. He was unclear *482 whether he had given money to the children directly, or to their mother (and his former wife) Adeline Kunis. He could not remember when payments were made; he thought it was mostly in cash; and he did not remember whether he had a checking account at the time. Adeline Kunis and Vincent's daughter, Danice, however, were in no substantial doubt as to the facts. Adeline was unequivocal in her testimony that she never received any support for her children from Vincent in the years before us, and Danice was unshaken in her testimony that she never got anything other than minor amounts from her father, totaling no more than $100 per year. We accept this testimony, have made findings accordingly, and hold that respondent has proved that Vincent was not entitled to dependency exemptions in the amount of $1,500, which he claimed in his joint returns for 1972 through 1975 on account of Vincent, Jr. and Danice, [10] either under the general rule of section 152(a), or the special rule of section 152(e)(2)(B). Respondent's determination of deficiencies in tax for all years is therefore *483 sustained, subject, however, to our disposition of the statute of limitations issue for the year 1972, which we next address in conjunction with the fraud issue. C. The Fraud Issue - All Years. Respondent having established that Vincent and Louise omitted substantial amounts of income from their returns for 1972 through 1975, the question now becomes whether any part of these omissions was due to fraud. Although the returns involved were joint, respondent determined additions to tax for fraud against Vincent only. See section 6653(b)(4). The necessary elements of fraud under section 6653(b), which respondent must establish, have been previously discussed herein in connection with the case of G&G Records, and need not be repeated. We hold that respondent has carried his necessary burden of establishing, by clear and convincing evidence, that petitioners underpaid their income tax for each of the years 1972 through 1975, and that at least a part of such underpayment in each year was due to Vincent's fraud. 1. Underpayment of Tax.- As previously noted, Vincent's failure to report ordinary taxable income from wages and interest, in the amounts as shown in our findings of fact, *484 was stipulated by the parties. Respondent has further proved that Vincent received ordinary income of $1,500, in the form of a constructive dividend, from G&G Records in 1972, and received furthe substantial distributions from the corporation in each of the years 1973, 1974 and 1975.Whether such further distributions in the latter years were fully taxable as ordinary dividends, or were partly a return of capital and liquidating distributions, see section 301(c), see United Mercantile Agencies, Inc. v. Commissioner,supra, need not concern us here. [11] In either case, the omission of these distributions from the joint returns produced an underpayment of tax in each year in some amount, which is all respondent was required to prove for purposes of section 6653(b). Plunkett v. Commissioner,supra;Lee v. United States,supra.We think that the circumstances surrounding Vincent's failure to report income in all the years before us fully support a finding of fraud.Vincent failed to report wage income from G&G Records on his 1972 joint income tax return. He also failed to report wage income from Joseph Pizza, Inc. on his 1973 and 1974 tax returns. He failed to report interest income *485 on his joint income tax returns for each of the years now before us. Admittedly, the mere failure to report income is not sufficient to establish fraud, and the amounts were not large. However, Vincent admitted at trial that he knew that wage and interest income was taxable. We also think it is significant that not a dollar of interest or wage income was reported in any year. [12] The clear inference is that such omissions were not due to mere negligence or random forgetfulness, but were pursuant to a deliberate and consistent plan. The same considerations apply with greater force to Vincent's total omission, in all years, of the very substantial distributions which he received from G&G Records. The amounts, as shown in our findings of fact, were simply too large to be ignored. When we further consider that Vincent, *486 as president and sole shareholder of G&G Records, fraudulently caused the corporation to file a false return for 1972, omitting therefrom the proceeds of sale of corporate assets which were the basis of these very distributions which he made to himself, the clear pattern emerges of an intent to conceal the entire transaction, both at the corporate and personal level, from the tax collector. We find it inherently incredible that petitioner, a well-educated man, and a practicing attorney-at-law, simply overlooked declaring all this income. Cf. Vise v. Commissioner,supra.
Other circumstances also point to Vincent's fraudulent intent. When respondent's Special Agent Loreto questioned him about wage income from Joseph Pizza, Inc., Vincent denied that he had received such income. Only upon being shown his payroll checks from Joseph Pizza, Inc. did he admit that he received these checks.Conduct to mislead or conceal assets is evidence of fraud. Spies v. United States,317 U.S. 492, 499 (1943). The circumstances surrounding the preparation of the joint income tax returns also evidence a consistent pattern of evasive conduct on the part of Vincent. During the tax years in issue, his *487 brother, Victor, prepared the joint income tax returns. At trial, Victor DeRosa testified that he "put down whatever he [Vincent DeRosa] told me to put down." Vincent did not provide his brother with any books or records from which to prepare these returns, and did not provide his brother with the customary W-2 or 1099 Forms from which Victor could determine Vincent's taxable income. Under comparable circumstances, the failure of the taxpayer to give complete information to the return preparer has been held to be indicative of fraud. Cf. Whitfield v. Commissioner,T.C. Memo. 1972-139. Vincent's behavior, in light of his statement that he always reviewed his personal return before filing it, convinces us that the intentionally attempted to conceal substantial amounts of income. Finally, our conclusion that respondent has satisfactorily proven fraud is supported by petitioner's improperly claimed dependency exemptions for Vincent DeRosa, Jr. and Danice DeRosa. Vincent testified at trial that he practiced, at times, as a divorce lawyer and was familiar with the "support test" what one was required to meet before claiming children as dependents. During the years in issue, Vincent *488 knew that he had given only nominal amounts of money to support Vincent, Jr. and Danice DeRosa. We can only conclude that Vincent claimed these additional dependency exemptions, knowing that he was not entitled to them, with the intent to avoid a tax that he knew or believed to be owing. Considering all the above, we conclude that respondent has met his burden of showing that Vincent committed fraud by failing to report substantial amounts of income, and by taking dependency exemption deductions for Vincent DeRosa, Jr. and Danice DeRosa, that he knew he was not entitled to claim. Fraud having been established, the statute of limitations is not a bar to the assessment and collection of the deficiencies asserted by respondent for 1972.Section 6501(c). [13] The additions to tax under section 6653(b) are sustained, and are properly applied to the entire deficiencies for calendar years 1972 through 1975. IV. Innocent Spouse.
The final issue for decision is whether Louise *489 DeRosa is an innocent spouse within the meaning of section 6013(e), and should therefore be relieved of any liability for deficiencies in her joint returns for 1972 through 1975. [14]Section 6013(e) provides, in relevant part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and *490 other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special Rules.--For purposes of paragraph (1) -- (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A). The burden of proving all three of these elements is upon the spouse claiming relief. Estate of Jackson v. Commissioner,72 T.C. 356 (1979); Sonnenborn v. Commissioner,57 T.C. 373 (1971). For calendar year 1972, respondent contends that the unreported income did not exceed 25 percent of the gross income as stated on the joint income tax return. Accordingly, respondent argues that for calendar year 1972, Louise cannot qualify as an innocent spouse. Section 6013(e) (1)(A). For calendar years 1973 through 1975, respondent concedes that petitioners omitted to declare income that was in excess of 25 percent of their reported gross income. However, respondent asserts that Louise cannot qualify as an innocent spouse under section 6013(e)(1)(B) or (C). Petitioners do not argue this issue on *491 brief in any detail, but appear to rely on the testimony of Louise to establish that she was an innocent spouse in each of the years before us. A. Calendar Year 1972.
The record establishes that Louise and Vincent filed a joint income tax return for calendar year 1972. [15] On their return, Vincent and Louise reported gross income of $11,475. [16] We have found that they failed to report $1,890.84 of gross income. Since $1,890.84 is less than 25 percent of the gross income reported on the 1972 tax return, Louise cannot qualify as an innocent spouse for this tax year. Section 6013(e)(1)(A). B. Calendar Years 1973 through 1975.
For calendar years 1973 through 1975, respondent contends that Louise fails to qualify as an innocent spouse since she knew, or had reason to know, of the substantial omissions of income that were not reported on the joint income tax returns.Section 6013(e)(1)(B). Respondent also argues that Louise benefited directly from the items omitted from gross income, and therefore *492 has failed to comply with the requirements of section 6013(e)(1)(C). Our findings of fact show that the gross income omitted from the joint returns, for 1973-1975, all of which was attributable to Vincent, is well in excess of 25 percent of the joint income which was reported. Louise has accordingly met the first test of section 6013(e). After careful consideration, however, we do not believe that Louise has met her burden of showing that she did not know, or have reason to know, of the rather substantial amounts of gross income that were not reported on her 1973 through 1975 income tax returns, within the meaning of section 6013(e)(1)(B). Whether or not Louise knew, or had reason to know, of the omission of gross income, is a factual issue that must be decided after consideration of all the facts and circumstances in a particular case. Hayes v. Commissioner,T.C. Memo. 1975-223. The United States Court of Appeals for the Fifth Circuit has defined what is meant by the phrase "reason to know," in the context of section 6013(e). The Court stated: A person has reason to know of a fact if he had information from which a person of ordinary intelligence which such person may have, *493 or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence. [Sanders v. United States,509 F.2d 162, 167 (5th Cir. 1975).] In order to establish that she had no reason to know of these large omissions from gross income, Louise must show that there were no facts within her knowledge, or of which she was fairly on notice, from which a reasonably prudent and intelligent taxpayer would have known of such omissions. Sanders v. United States,supra;Anderson v. Commissioner,T.C. Memo. 1975-104. At trial, Louise testified that she did not know of any financial interests that her husband may have had, other than his law practice, in the years before us. Later, she contradicted this earlier statement and admitted that in 1975 she worked at least part of this time as a bookkeeper in a restaurant which Vincent had owned for some time. Louise also testified that she had no knowledge whether her husband received salary checks from G&G *494 Records.Under cross-examination, she later admitted that she had signed and deposited her husband's salary checks from G&G Records into her own bank account. [17]
The credibility of a witness's testimony is judged, among other things, by whether it is consistent with prior explanations offered by the petitioner.See Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. Considering Louise's contradictory and sometimes vague testimony, we do not believe that her verbal and self-serving denial of any knowledge regarding Vincent's omissions from gross income can be taken as conclusive evidence. The record is not clear whether Louise reviewed her joint income tax returns, as a prudent person would do. At trial, she first testified that she was not sure whether her returns were filled out at the time that she signed them. When asked whether she had looked at these returns, Louise testified that she may have.She subsequently denied that she noticed how much income was reported on these returns. In light of such statements, it is impossible *495 to determine what knowledge Louise may have had, or not had, regarding the accuracy of her joint income tax returns. We do not think, however, that a spouse can obtain the benefits of section 6013(e) by simply turning a blind eye to -- by preferring not to know of -- material omissions of income from a return, derived from sources of which she had knowledge, and which the most casual inspection would have revealed. Accordingly, we hold that Louise has not met her burden of showing that there were no facts within her knowledge, or as to which she was reasonably chargeable with knowledge or notice, from which a prudent taxpayer would have known of these omissions from the 1973-1975 returns. Section 6013(e)(1)(B); Anderson v. Commissioner,supra. Louise DeRosa thus fails to qualify as an innocent spouse during calendar years 1973 through 1975, and it is unnecessary for us to consider the contentions of the parties with respect to section 6013(e)(1)(C). In accordance with this opinion, Decisions will be entered under Rule 155.
Footnotes
*. Cases of the following petitioners are consolidated herewith: G&G Records, Inc., Transferor, Vincent J. DeRosa, Transferee, docket No. 20307-80; Vincent J. DeRosa and Louise DeRosa, Docket No. 20306-80.↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the tax years here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * The liability of Louise DeRosa is limited to the deficiencies only.↩
2. G&G Records has stipulated that the above computation is correct. It also corresponds to respondent's determination.
3. Louise did not sign the 1972 return. At trial, however, and on the witness stand, she adopted and ratified it, and we accept it as a joint return. Estate of Campbell v. Commissioner,56 T.C. 1↩ (1971). 4. See sections 6013(e)(2)(B), 6501(e)(1)(A)↩.
5. Section 6653(b) provides in pertinent part: (b) Fraud.--If any part of any underpayment * * * of any tax required to be shown on a return is due to fraud, there shall be added to this tax an amount equal to 50% of the underpayment. * * *.↩
6. New York Debtor and Creditor Law defines insolvency as: 271Insolvency
1. A person is insolvent when the present salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured * * *. [N.Y. Debt. & Cred. Law sec. 270↩ (McKinney 1945)]. 7. G&G Records did not file corporate tax returns subsequent to calendar year 1972. Witnesses for petitioners, including Vincent, testified that the whereabouts of the corporate records was unknown.↩
8. Respondent qualifies as a creditor, and the 1972 tax as a debt, under the New York Debtor and Creditor Law. Section 270 defines a creditor as any "person having any claim, whether matured or unmatured, liquidated, absolute, fixed or contingent." The same section defines debt as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. Debt. & Cred. Law sec. 270↩ (McKinney 1945).
9. Section 6501(e), in relevant part, reads as follows: (e) Substantial Omissions of Items. - Except as otherwise provided in subsection (c) - (1) Income taxes. - In the case of any tax imposed by subtitle A- (A) General rule. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph- (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and * * *.↩
10. In the years before us, section 151(e) provided an annual exemption of $750 for each qualifying dependent.↩
11. Vincent's cost basis in the G&G Records stock was $2,000. The record is not clear when, in 1973, 1974 or 1975, G&G Records' accumulated earnings and profits, which would support the payment of an ordinary dividend, were exhausted. See section 316(a). ↩
12. In fact, in none of the years before us was any income reported from any source except Vincent's law practice.↩
13. The elements of fraud that must be proved by the respondent under section 6653(b) are essentially the same as those that must be proved under section 6501(c)(1)↩ in order to lift the bar of the statute of limitations.
14. As previously noted, respondent has not sought to impose any additions to tax under section 6653(b)↩ upon Louise.
15. See footnote 3, supra.↩
16. This figure is the amount shown in the return as gross receipts from Vincent's law practice, the only source of income disclosed on the return. Section 6501(e)(1)(A)(i)↩.
17. Louise DeRosa's personal bank account was used as the family bank account during the years in issue.↩